IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00727–EWN–BNB


CEZER MORRIS, individually, and
on behalf of all others similarly situated,

      Plaintiff,

v.

TRAVELERS INDEMNITY COMPANY OF AMERICA,
a Connecticut Corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an insurance case.  Plaintiff Cezer Morris, asserts that Defendant Travelers Indemnity Corporation of America (1) breached the insurance contract between them by failing to pay personal injury protection ("PIP") benefits and (2) violated Colorado Revised Statutes § 10–4–706(4)(a).  In addition, Plaintiff seeks reformation of the insurance contract and a declaration of rights under the proposed reformed contract.  This matter is before the court on (1) "Plaintiff Morris' Brief in Support of Motion Under [Federal Rule of Civil Procedure] 56 For Partial Summary Judgment," filed December 22, 2005, and (2) "Defendant The Travelers

Indemnity Company of America's Brief in Support of Motion For Summary Judgment," filed

December 27, 2005.  Jurisdiction is based on 28 U.S.C. § 1332.

FACTS

*1.      Factual Background*

 *a.      Overview of No-Fault Act and Brennan*

  Before addressing the issues raised by this case, I review the relevant portions of

Colorado's No-Fault Act, which was repealed in 2003,[1] and the decision in *Brennan v. Farmers*

*Alliance Mutual Insurance Company*, 961 P.2d 550 (Colo. App. 1998), *cert. denied*, 1998 Colo.

Lexis 587 (Colo. Aug. 24, 1998), interpreting those provisions.  "The No-Fault Act requires that

a complying [contract] include mandatory PIP benefits."  *Brennan*, 961 P.2d at 552.  Section

10–4–706(1) sets forth the basic coverages for inclusion in a compliant insurance contract.

Specifically, section 10–4–706(1), as relevant here, requires a carrier to provide:

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars
> per person for any one accident, for payment of all reasonable and necessary
> expenses for medical . . . and nonmedical remedial care and treatment . . .
> performed within five years after the accident for bodily injury arising out of the
> use or operation of a motor vehicle . . . .
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars
> per person for any one accident within ten years after such accident for payment of
> the cost of rehabilitation procedures or treatment and rehabilitative occupational
> training necessary because of bodily injury arising out of the use or operation of a
> motor vehicle.

---

[1]Colorado's No-Fault Act comprised Colorado Revised Statutes sections 10–4–701 to
10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003.  *See* Colo. Rev.
Stat. § 10–4–726 (effective July 1, 2003).  Thus, I cite to the 2002 version of Colorado Revised
Statutes.

Colo. Rev. Stat. § 10–4–706(1)(b)(I), (1)(c)(I).  Further, section 10–4–706(4)(a) provides that:

> An insurer issuing policies providing coverages as set forth in this section shall
> provide written explanations of all available coverages prior to issuing any policy
> to an insured.  After a named insured selects a policy with desired personal injury
> protection coverage, an insurer shall not be under any further obligation to notify
> such policy holder in any renewal or replacement policy of the availability of basic
> personal injury protection policy or of any alternative personal injury protection
> coverage.

Colo. Rev. Stat. § 10–4–706(4)(a).  Section 10–4–707 defines the category of people who

receive coverage under section 10–4–706 to include: (1) the named insured, (2) resident relatives

of the named insured, (3) passengers occupying the insured's vehicle with the consent of the

insured, and (4) pedestrians who are injured by the covered vehicle.  *Brennan*, 961 P.2d at 553.

The Colorado No-Fault Act also requires every insurer to offer the named insured

extended PIP benefits in exchange for higher premiums.  *See* Colo. Rev. Stat. § 10–4–710(2)(a);

*see also Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003).

Specifically, section 10–4–710(2)(a) requires that:

> Every insurer shall offer the following enhanced benefits for inclusion in a
> complying policy, in addition to the basic coverages described in section
> 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitations and payment of benefits equivalent to eighty-five
> percent of loss of gross income per week from work the injured person would
> have performed had such injured person not been injured during the period
> commencing on the day after the date of the accident without dollar or time
> limitations.

Colo. Rev. Stat. § 10–4–710(2)(a).  Additionally, section 10–4–710(2)(b) states that "[a]

complying policy may provide that all benefits set forth in section 10–4–706(1)(b) to (1)(e) and in

this section are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person . . . ."  Colo. Rev. Stat. § 10–4–710(2)(a).

In *Brennan*, the Colorado Court of Appeals determined that the additional PIP coverage set forth in section 10–4–710(2)(a) applied to pedestrians and non-family occupants of the vehicle.  *Brennan*, 961 P.2d at 553.  The *Brennan* court concluded that "it is apparent that the extended coverages offered there must apply to the categories of persons listed in [section] 10–4–707(1)."  *Id.*  Thus, following *Brennan*, insurers could not use the pedestrian limitation in their offers of additional PIP coverage.  The court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits."  *Id.* at 554.

### b.  *Facts Relating to Plaintiff*

On January 23, 2002, Plaintiff was a passenger in a vehicle driven by Lee Grant Austin ("Austin") which was involved in a three-car automobile accident in Denver, Colorado.  (Class Action Compl. and Jury Demand [filed Apr. 21, 2005] [hereinafter "Compl."].)  As a result of the collision, Plaintiff suffered severe personal injuries and other losses, including medical expenses and lost wages.  (Pl. Morris' Resp. to Def.'s Mot. For Summ. J., Statement of Additional Facts ¶ 1 [filed Jan. 17, 2006] [hereinafter "Pl.'s Resp."]; *admitted at* Def. The Travelers Indemnity Company of America's Reply in Supp. of Travelers Mot. For Summ. J., Resp. to Pl.'s Additional Facts ¶ 1 [filed Feb. 16, 2006] [hereinafter "Def.'s Reply"].)  At the time of the collision, Austin was driving a 1996 Toyota Avalon insured under automobile insurance policy number 9216879141011 ("Austin Policy").  (Compl. ¶ 22; Def. The Travelers Indemnity Company of

America's Br. in Supp. of Mot. For Summ. J., Statement of Undisputed Material Facts ¶ 2 [filed Dec. 27, 2005] [hereinafter "Def.'s Br."]; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  The Austin Policy included PIP coverage as defined by Colorado Revised Statutes § 10–4–701.  (Compl. ¶ 23.)  Appended to the Austin Policy was PIP endorsement number PL–6206.  (Pl. Morris' Br. in Supp. of Mot. Under Fed. R. Civ. P. 56 For Partial Summ. J., Statement of Undisputed Material Facts ¶ 3 [filed Dec. 22, 2005] [hereinafter "Pl.'s Br."]; *admitted at* Def. The Travelers Indemnity Company of America's Resp. to Pl.'s Mot. For Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 6 [filed Jan. 11, 2006] [hereinafter "Def.'s Resp."].)  The PIP endorsement number PL–6206, with revision dates January 1992, February 1994, June 1995, October 1998, and September 1999 contained the following language: "[i]f an Added Personal Injury Protection Coverage Option 'R' is shown in the Declarations, the provisions of Section I [basic PIP] are amended as follows, but only with respect to any amounts payable thereunder because of 'bodily injury' to an 'insured' who is a 'named insured' or 'family member.'"  (*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted in relevant part at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.) By December 2001, Defendant revised this language to omit the aforementioned exclusions. (Pl.'s Resp., Ex. 20 [PIP Endorsement 6206 12–01].)

  As part of the application process for the Austin Policy, Dorothy Austin signed a "Supplementary Personal Injury Application — Colorado" ("PIP Form") and an "ACORD" Application form.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 3; *deemed admitted at*

Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)[2]  PIP Form reflected two basic

Personal Injury Protection ("PIP") benefits.  (*Id.*, Statement of Undisputed Material Facts ¶ 4, Ex.

A–3 [PIP Form].)  Specifically, the PIP Form reflected two PIP options with preferred provider

organization ("PPO") and two additional PIP options.  (*Id.*)  The PIP Form explains that

Defendant offered coverage for "benefits for medical expenses, rehabilitation expenses, work loss,

essential services expenses and death compensation resulting from an eligible person's injuries

caused by an auto accident."  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

Defendant offered additional PIP options "RA" and "RARB."  (*Id.*, Statement of

Undisputed Material Facts ¶¶ 6–7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶¶ 6–7.)  Option RA provides, *inter alia*, medical expenses up to $200,000

unlimited in time, up to $50,000 in rehabilitation expenses, and up to $400 per week in wage loss

expenses for fifty-two weeks subject to a $200,000 maximum aggregate.  (*Id.*, Statement of

Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 6.)  Option RARB provides, *inter alia*, medical and rehabilitation expenses in the

amount of "$200,000 [m]aximum [a]ggregate," and work loss in the amount of "$400 per week

---

[2]Plaintiff's denial does not address Defendant's proffered fact.  Specifically, Plaintiff states "[d]enied, to the extent that the record is not clear if, or when, [Dorothy] Austin's signature was affixed to the A[CORD] application form."  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  First, Plaintiff does not deny the proffered fact that Dorothy Austin received and signed the PIP Form.  (*Id.*)  Second, in support of his denial with respect to the ACORD application Plaintiff cites the deposition testimony of Defendant's agent Roger Suggs.  (*Id.*)  Suggs's deposition testimony does not refer to the ACORD.  (*Id.*, Ex. 1 at 5–12 [Dep. of Roger Suggs].)  Thus, I deem Defendant's proffered fact number three admitted as true.

maximum and limited by the $200,000 Maximum Aggregate." (*Id.*, Statement of Undisputed

Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.)

As evidenced by the "X" mark and the signature at the bottom of the PIP Form, Dorothy Austin

declined the APIP options.  (*Id.*, Statement of Undisputed Material Facts ¶ 8; *deemed admitted at*

Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)[3]  Dorothy Austin chose

Option Q, which provided a maximum of $50,000 in medical benefits, $50,000 in rehabilitation

benefits, and up to $400 per week for lost wages for up to fifty-two weeks.  (*Id.*, Statement of

Undisputed Material Facts ¶ 8; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 8.)  Dorothy Austin also signed an ACORD application that reflects

an option for "added personal injury protection."  (*Id.*, Ex. A–4 [ACORD Application signed

Nov. 21, 1996].)  In both forms, Dorothy Austin declined additional PIP benefits.

     Plaintiff began receiving benefits from Defendant under the Austin Policy after the January

23, 2002, automobile accident.  (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at*

Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.)  In the application Plaintiff

---

[3]Plaintiff denies that Dorothy Austin declined the additional PIP benefits.  (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)  In support, Plaintiff states that "agent Suggs can't state when the signature was affixed . . ." (*Id.*)  First, Plaintiff's denial does not address the proffered fact.  Next, the date of Dorothy Austin's signature is irrelevant in light of the fact that: (1) Plaintiff does not deny that Dorothy Austin signed the PIP Form, or (2) Dorothy Austin declined the additional PIP benefits.  Indeed, Plaintiff does not suggest that Defendant manufactured the PIP Form or that Dorothy Austin signed the PIP Form after Plaintiff's accident. Additionally, Suggs's testimony is irrelevant in light of Plaintiff's previous admissions.  Plaintiff admitted Defendant's proffered facts five through seven.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 5–7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 5–7.)  These facts set forth in detail exactly what the PIP Form offered Dorothy Austin. Accordingly, I deem Defendant's proffered fact admitted as true.

presented to Defendant for benefits, Plaintiff estimated his "average weekly wage or salary" to be $440.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)

## 2.   *Procedural History*

On April 21, 2005, Plaintiff filed a complaint in this court.  (Compl.)  Plaintiff asserted the following claims: (1) reformation for alleged violations of Colorado Revised Statutes §§ 10–4–710, 10–4–707, and 10–4–706(4)(a) and a declaration of rights under the reformed contracts; (2) breach of contract for failure to pay additional PIP benefits; and (3) violation of Colorado Revised Statutes § 10–4–706(4)(a).  (*Id.* ¶¶ 45–66.)  On June 17, 2005, Defendant filed its motion to dismiss or alternatively to strike class allegations.  (The Travelers Indemnity Company of America's Mot. to Dismiss, or, Alternatively, to Strike Class Allegations [filed June 17, 2005].)  Defendant argued that it fully complied with Colorado law in issuing and providing PIP coverage under the Austin policy.  (*Id.* at 9.)  Defendant contended that given its disclosures and compliance with Colorado law, "the statute of limitations bars Plaintiff's claims."  (*Id.* at 11.)  Additionally, Defendant contended that this case cannot proceed as a class action.  (*Id.* at 12–17.)  On July 12, 2005, Plaintiff filed his response to Defendant's motion to dismiss.  (Pl. Cezer Morris' Resp. to The Travelers Indemnity Company of America's Mot. to Dismiss, or, Alternatively, to Strike Class Allegations [filed July 12, 2005].)  On July 27, 2005, Defendant filed a reply in support of its motion to dismiss.  (Reply in Supp. of the Travelers Indemnity Company of America's Mot. to Dismiss, or, Alternatively, to Strike Class Allegations [filed July 27, 2005].)

On October 24, 2005, Plaintiff filed a motion for class certification.  (Pl. Morris' Mot. for

Class Certification Pursuant to Fed. R. of [sic] Civ. P. 23 [filed Oct. 24, 2005].)  Plaintiff's

complaint alleged that Defendant "never made a legally adequate offer of [additional] PIP

coverage . . . to its insureds because its offer . . . excluded (1) pedestrians struck  . . . and (2) non-

relative occupants . . . ."  (*Id.* at 2.)  Additionally, Plaintiff contended that Defendant violated

Colorado Revised Statutes § 10–4–706(4)(a) because it failed to provide an adequate written

explanation of available additional PIP coverage options.  (*Id.*)  Accordingly, Plaintiff based his

motion for class certification on the assertion that Defendant's "acts and omissions have occurred

in exactly the same manner as to each insured, and resulted each time in the offer and issuance of

automobile insurance policies throughout the State of Colorado without pre-issuance obligations

being met."  (*Id.*)  On November 14, 2005, Defendant filed a response to Plaintiff's motion for

class certification.  (Def. The Travelers Indemnity Company of America's Resp. Opposing Mot.

for Class Certification [filed Nov. 14, 2005].)  On December 2, 2005, Plaintiff filed a reply in

support of his motion for class certification.  (Pl. Morris' Reply to Def. The Travelers Indemnity

Company of America's Resp. Opposing Mot. for Class Certification [filed Dec. 2, 2005].)  On

December 15, 2005, Defendant filed a surreply in opposition to Plaintiff's motion for class

certification.  (Travelers Surreply in Opp'n to Pl.'s Mot. for Class Certification [filed Dec. 15,

2005].)

On December 22, 2005, Plaintiff filed a motion for partial summary judgment.  (Pl.'s Br.)

Plaintiff argues that because Defendant's policy does not contain coverage in compliance with

Colorado Revised Statutes § 10–4–710, the court should reform the Austin Policy and declare his

rights to the full coverage contemplated by the statute. (*Id.* at 8–13.) Additionally, Plaintiff argues that he is entitled to summary judgment on his third claim for relief — violation of Colorado Revised Statutes § 10–4–706(4)(a) — because Defendant did not provide "a written explanation of PIP coverages that were required to be offered prior to issuing the Austin policy." (*Id.* at 13.) On January 11, 2006, Defendant filed a response to Plaintiff's motion for partial summary judgment. (Def.'s Resp.) On February 6, 2006, Plaintiff filed a reply in support of its motion for partial summary judgment. (Pl. Morris' Reply in Supp. of Mot. For Partial Summ. J. [filed Feb. 6, 2006] [hereinafter "Pl.'s Reply"].) This matter is fully briefed.

On December 27, 2005, Defendant filed a motion for summary judgment. (Def.'s Br.) Defendant argues that: (1) its offer of additional PIP benefits conformed with the No-Fault Act; (2) Plaintiff has been fully compensated by his settlement with the tortfeasor and he is not entitled to anything further from Defendant; and (3) since Plaintiff's individual claims fail, he cannot be a class representative. (*Id.* at 7–17.) On January 17, 2006, Plaintiff filed a response to Defendant's motion for summary judgment. (Pl.'s Resp.) On February 16, 2006, Defendant filed a reply in support of its motion for summary judgment. (Def.'s Reply.) This matter is fully briefed.

On January 19, 2006, I issued an order denying Defendant's motion to dismiss and Plaintiff's motion for class certification. (Order and Mem. of Decision [filed Jan. 19, 2006] [hereinafter "Order"].) In denying Defendant's motion, I held that "[v]iewing the facts in a light most favorable to Plaintiff and taking all the well pled allegations in the complaint as true . . . it [was] not clear at [that] stage of the litigation that Plaintiff received an offer of extended PIP benefits in conformity with Colorado Revised Statutes § 10–4–710." (*Id.* at 12.) Additionally, I

denied Plaintiff's motion for class certification on the bases that: (1) the proposed class was not

clearly ascertainable because the class definition was overly broad and it was not possible to

certify the class without deciding the merits of the litigation; (2) without a proper class definition,

it was not possible to tell whether the proposed class was so numerous that joinder of all plaintiffs

would be impracticable; and (3) Plaintiff could not establish that there were questions of law or

fact common to the class. (*Id.* at 14–18.)

## ANALYSIS

### *1.    Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc.

v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The

nonmoving party may not rest solely on the allegations in the pleadings, but must instead

designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S.

at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the

suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

**2.     *Evaluation of Plaintiff's Claims***

Plaintiff's complaint asserts three claims against Defendant: (1) reformation of the insurance contract and a declaration of Plaintiff's rights under the reformed contract, (2) breach of contract for failure to pay additional PIP benefits, and (3) violation of Colorado Revised Statutes § 10–4–706(4)(a). (Compl. ¶¶ 45–66.) Defendant contends that it is entitled to summary judgment on all of Plaintiff's claims because it offered Dorothy Austin additional PIP benefits in conformity with the No-Fault Act. (Def.'s Br. at 8–15.) Plaintiff, on the other hand, argues that he is entitled to reformation of the Austin Policy because the optional coverage under the Austin Policy does not comply with Colorado Revised Statutes §§ 10–4–710(2)(a) and 10–4–706(4)(a). (Pl.'s Br. at 8; Pl.'s Resp. at 7–10.) I address Plaintiff's claims for relief in turn.

**a.     *Plaintiff's Request For Reformation and Declaration of Rights Under the Proposed Reformed Contract***

-12-

Plaintiff's first claim requests reformation of the Austin Policy for Defendant's alleged violations of Colorado Revised Statutes §§ 10–4–710, 10–4–707, and 10–4–706(4)(a).[4]  (Compl. ¶¶ 47.)  Additionally, Plaintiff requests "a declaration of their rights under the reformed policies." (*Id.*)  Thus, I address Plaintiff's request for reformation of the Austin Policy with respect to sections 10–4–710 and 10–4–706.

> ### *(1)    Defendant's Offer of Additional PIP Benefits Complied With Colorado Revised Statues § 10–4–710.*

Plaintiff contends he is entitled to reformation of the Austin Policy because Defendant's offer of additional PIP benefits violated Colorado Revised Statutes § 10–4–710.  (Pl.'s Br. at 8–18.)  Plaintiff does not dispute that Dorothy Austin received an offer of additional PIP benefits. (*See Facts* § 1, *Factual Background* at 6–7, *supra*.)  Rather, Plaintiff contends that the "offer" was defective under Colorado Revised Statutes § 10–4–710 because: (1) the additional PIP selections ostensibly offered by Defendant do not have the proper options required under Colorado Revised Statutes § 10–4–710 because there is no option for unlimited wage benefits offered to any of Defendant's insureds, (Pl.'s Br. at 8–12; Pl.'s Resp. at 7–9, 18–22); and (2) the policy failed to include an option for the named insured to purchase additional PIP benefits for non-family occupants and pedestrians, (Pl.'s Br. at 8–10, Pl.'s Resp. at 7–8).  I evaluate each argument in turn.

---

[4]Plaintiff's unartfully drafted complaint and partial motion for summary judgment does not explain or address its request for declaratory relief and reformation with respect to Colorado Revised Statutes § 10–4–707.  (*See* Compl., *passim*; Pl.'s Br., *passim*; Pl.'s Resp., *passim*.) Thus, I do not address any alleged violation of section 10–4–707.

**(A)**     ***Defendant Offered the Correct Options of Additional PIP***
***Benefits Under Colorado Revised Statutes § 10–4–710(2)(a)***

Plaintiff contends that he is entitled to reformation because Defendant did not offer

"[c]ompensation of all expenses described in [section] 10–4–706 without dollar or time limitations

. . . equivalent to eighty-five percent of loss of gross income per week . . . commencing the day

after the accident without dollar or time limitations." (Pl.'s Br. at 14; Pl.'s Resp. at 11–12,

18–22.)  The relevant inquiry in the instant case is whether Defendant offered Dorothy Austin

additional PIP coverage that satisfies the No-Fault Act.  *Brennan*, 961 P.2d at 554.  Specifically,

the offer of additional PIP coverage must satisfy section 10–4–710(2)(a)(I) or (II).

Colorado Revised Statutes § 10–4–710(2)(a) requires that:

> Every insurer shall *offer* the following enhanced benefits for inclusion in a
> complying policy, in addition to the basic coverages described in section
> 10–4–706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitation; **or**
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b)
> without dollar or time limitations and payment of benefits equivalent to eighty-five
> percent of loss of gross income per week from work the injured person would
> have performed had such injured person not been injured during the period
> commencing on the day after the date of the accident without dollar or time
> limitations.

Colo. Rev. Stat. § 10–4–710(2)(a) (emphasis added).  Additionally, section 10–4–710(2)(b) states

that "[a] complying policy may provide that all benefits set forth in section 10–4–706(1)(b) to

(1)(e) and in this section are subject to an aggregate limit of two hundred thousand dollars

payable on account of injury to or death of any one person . . . ."  Colo. Rev. Stat. §

10–4–710(2)(b).  In sum, sections 10–4–710(2)(a) and (2)(b) require an insured to offer: (1)

-14-

medical expenses up to $200,000, or (2) medical expenses and wage loss benefits based on

eighty-five percent of an individual's gross income, up to $200,000. *Id.*

Here, Defendant's PIP Form offered Plaintiff additional PIP benefits to conform with

section 10–4–710(2)(a)(I).  (Def.'s Br., Ex. A–3 [Supplemental Personal Injury Application —

Colorado].)  Defendant's option entitled "RA" provides for medical expenses up to $200,000

without any time limitation.  (*Id.*)  Moreover, Defendant's option "RARB" goes beyond the

requirements of the statute and provides for medical and rehabilitative expenses up to $200,000

without any time limitation in addition to work loss benefits of $400 per week up to $200,000

without any time limitation.  (*Id.*)  Thus, Defendant's offer conforms to Colorado Revised

Statutes § 10–4–710(2)(a) and Plaintiff is not entitled to reformation of the Austin Policy based

on this argument.

Plaintiff argues that Defendant's PIP Form is invalid because "[t]here are no [additional]

PIP coverages that contain more than basic PIP work loss benefits of $400 a week."  (Pl.'s Br. at

14.)  Plaintiff essentially argues that Defendant must offer both additional PIP options contained

in Colorado Revised Statutes § 10–4–710(2)(a).  Plaintiff contends that "[t]he plain language of

section 10–4–710(2)(a) does not give the insurer the option of offering the enhanced medical

benefits package of section 10–4–710(2)(a)(I) without also offering, as an alternative, the

enhanced medical and lost wages benefits package of section 10–4–710(2)(a)(II)."  (Pl.'s Resp. at

19.)  Plaintiff misinterprets the statute.

Statutory interpretation is a question of law.  *W. Fire Truck, Inc. v. Emergency One, Inc.*,

134 P.3d 570, 573 (Colo. App. 2006).  Courts must first look to the plain meaning of the statute,

and "if the language is clear and the intent of the General Assembly may be discerned with certainty" then courts do not need to resort to other rules of statutory interpretation. *Id.* Here, Colorado Revised Statutes § 10–4–710(2)(a) is clear that an insurer may offer either the benefits under section 10–4–710(2)(a)(I) **or** (a)(II). Colo. Rev. Stat. § 10–4–710(2)(a). Plaintiff seeks to turn the disjunctive "or" which separates section 10–4–710(2)(a)(I) and section 10–4–710(2)(a)(II) into a conjunctive "and." (Pl.'s Resp. at 20.) Plaintiff contends that such interpretation is mandated by the phrase "at the option of the named insured" in the opening sentence of section 10–4–710(2)(a). Plaintiff's interpretation is completely contrary to the plain meaning of the statute.

Section 10–4–710(2)(a) states in relevant part that: "[e]very insurer shall *offer* the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured." Colo. Rev. Stat. § 10–4–710(2)(a) (emphasis added). The phrase "at the option of the named insured," modifies the first phrase mandating that "[e]very insurer shall offer the following enhanced benefits for inclusion in a complying policy . . ." *Id.* This is so because the directive of section 10–4–710(2)(a) is on the insurer and not the insured. *Brennan*, 961 P.2d at 554. The "insured's option," to which the statute refers, is the insured's option to purchase such additional benefits in his complying policy, not the insured's option regarding which additional benefits package to accept. Further, it is not the insured's obligation to accept additional PIP benefits for inclusion in a complying policy. Rather, the insurer must simply offer those additional PIP benefits for inclusion in a complying policy. *Id.* Thus, Plaintiff's argument as to this point is unavailing.

Additionally, Plaintiff contends that legislative history and "reports of market conduct examinations under the authority of the Colorado Division of Insurance" support his position that Defendant violated "section 10–4–710(2)(a) because the Austin Policy failed to offer the option of the enhanced medical and wage benefits package of section 10–4–710(2)(a)(II) as well as the option of the enhanced medical benefits of section 10–4–710(2)(a)(I)." (Pl.'s Br. at 20–22.) First, the legislative history does not change the plain meaning of the statute. "Only when the statute is unclear or ambiguous may the court look beyond the words of the statute to legislative history or rules of statutory construction." *People v. Coodale*, 78 P.3d 1103, 1107 (Colo. 2003). As stated above, the statute at issue is clear on its face and it is not necessary to look to legislative intent. Further, the market conduct examinations cannot overcome the plain meaning of the statute. Thus, it is not appropriate for the court to consider such reports. Indeed, Plaintiff does not cite to any legal authority to mandate the court's consideration in light of an unambiguous statute. (Pl.'s Br., *passim*; Pl.'s Resp., *passim*.)

Finally, Plaintiff contends that:

> in *Breaux [v. American Family Mutual Insurance Company*], No. 04–cv–000191–EWN–MJW, slip op. (D. Colo. Sept. 22, 2005) this [c]ourt has held that, where, as here, an insurer made a statutorily compliant offer of the benefits set out in section 10–4–710(2)(a)(I), but failed to make a statutorily compliant offer of the benefits set out in section 10–4–710(2)(a)(II), the insurer's offer was in violation of the No-Fault Act, and the additional benefits . . . must be incorporated into the policy.

(Pl.'s Resp. at 22.)  Plaintiff's reliance on *Breaux* is misplaced.  In *Breaux*, the defendant reformed its own policy to include benefits that conformed with section 10–4–710(2)(a)(II). *Breaux*, 04–cv–000191–EWN–MJW, slip op. at 12 (D. Colo. Sept. 22, 2005).  Indeed, the court

-17-

acknowledged that "Defendant violated section 10–4–710(2)(a)(II) by its own admission." *Id.*

Thus, the court did not address whether the defendant in that case was required to offer benefits

under sections 10–4–710(2)(a)(I) and (2)(a)(II). Accordingly, *Breaux* does not support Plaintiff's

position that "an insurer is required to offer both of the options of [additional] PIP benefits

described therein." (Pl.'s Resp. at 22.) Plaintiff is not entitled to reformation with respect to this

issue.

### (B)   *Exclusion of Non-Family Occupants and Pedestrians in the Austin Policy*

Next, Plaintiff seeks reformation of the Austin Policy based on his assertion that

Defendant violated Colorado Revised Statutes § 10–4–710(2)(a) because the Austin Policy did

not extend additional PIP benefits to pedestrians and non-family occupants. (Pl.'s Br. at 8–13.)

Specifically, Plaintiff contends that the Austin Policy must be reformed because the PIP

endorsement sent to Dorothy Austin limited additional PIP benefits to an "insured" who is a

"named insured" or a "family member." (*Id.* at 9.) Plaintiff asserts that "[w]hen an insurer fails to

offer the insured optional coverage that satisfies the No-Fault Act, additional coverage in

conformity with the offer mandated by statute will be incorporated into the policy." (*Id.*)

Generally, under Colorado law, "[r]eformation of a written instrument is appropriate only

when the instrument does not represent the true agreement of the parties. The purpose of

reformation is to give effect to the parties' actual intentions." *Carder, Inc. v. Cash*, 97 P.3d 174,

180–81 (Colo. App. 2003) (citing *Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13

[Colo. 1990]). As is relevant to the instant case, "when . . . an insurer fails to offer the insured

optional coverage that satisfies the No-Fault Act, additional coverage in conformity with the offer

mandated by statute will be incorporated into the policy." *Brennan*, 961 P.2d at 554 (citing

*Thompson v. Budget Rent-A-Car Systems, Inc.*, 940 P.2d 987 [Colo. App. 1996]).  Essentially,

when a policy is violative of a statute, reformation is the required remedy to assure that coverage

will meet the statutory minimums.  *Clark II*, 292 F. Supp. 2d at 1266 (citation omitted).

The extended coverages offered in section 10–4–710(2)(a) apply to the categories of

persons listed in section 10–4–707(1).  *Brennan*, 961 P.2d at 553.  Specifically, additional PIP

coverage is available to pedestrians and non-family occupants of a vehicle.  *Id.*  Here, Defendant

does not dispute that the PIP endorsement PL–6206, in effect at the time Dorothy Austin

purchased the Austin Policy, limited the coverage as represented by Plaintiff.  (Def.'s Resp., Resp.

to Statement of Undisputed Material Facts ¶ 8.)  Thus, Defendant's policy did not satisfy the No-

Fault Act at the time of purchase.

Despite this, reformation is not appropriate in the instant case because Defendant removed

the offensive language from its policy and definitively reformed the policy in an endorsement

dated December 2001.  (Pl.'s Br., Ex. 10 [Personal Injury Protection Coverage — Colorado].)

The 2001 endorsement brought the Austin Policy into compliance with the No-Fault Act by

omitting the language upon which Plaintiff bases his claim for reformation.  (*Id.*)  It is a general

contract principle and established Colorado law that "'[a]n insurance policy and an endorsement

attached to it must be considered as a single instrument, and they should be construed together in

the absence of an internal conflict which cannot be reconciled.'"  *Essex Ins. Co. v. Vincent*, 52

F.3d 894, 897 (10th Cir. 1995) (quoting *Martinez v. Hawkeye-Security Ins. Co.*, 195 Colo. 184,

576 [Colo. 1978]).  When called upon to construe an insurance contract, a court must read the contract as a whole and give meaning to all the terms contained within the policy.  *Dome Corp. v. Kennard*, 172 F.3d 1278, 1280 (10th Cir. 1999); *see also Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001) (referring to the notion in contract law that language should be construed as a whole, and specific phrases or terms should not be interpreted in isolation) (citation omitted).  Thus, even assuming the initial Austin Policy was defective, at the latest, Defendant complied with the statute by December 2001.  Accordingly, by the time of Plaintiff's accident in January 2002, Defendant had reformed the Austin Policy.  For the foregoing reasons, Plaintiff is not entitled to reformation of the Austin Policy and Defendant is entitled to summary judgment.

Even assuming Defendant did not reform the Austin Policy on its own volition, equity does not require that the Austin Policy be reformed to provide Plaintiff with optional coverage which Dorothy Austin declined after Defendant presented that optional coverage to her.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  Indeed, as the court noted in *Sigala v. Hartford Underwriters Ins. Co.*, No. 04–cv–000196–REB–MJW, 2005 WL 2098141 * 6 (D. Colo. Aug. 29, 2005), "[t]he fact that the policies issued to [the plaintiff] contained inaccurate descriptions of the [additional] PIP coverage that [plaintiff] had been offered, and which she declined, does not support her claim for reformation."  Were this court were to reform the Austin Policy to reflect the higher amount of PIP benefits, this would not reflect the intent of the parties.  Dorothy Austin's expressed intention was to decline Defendant's offer of additional PIP benefits.  (Def.'s

-20-

Br., Statement of Undisputed Material Facts ¶ 8; *deemed admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 8.)  Accordingly, Plaintiff is not entitled to reformation

and Defendant is entitled to summary judgment.

### (2)      *Violation of Section 10–4–706(4)(a)*

Finally, Plaintiff contends that he is entitled to reformation of the Austin Policy because

Defendant's offer of additional PIP benefits under Colorado Revised Statutes § 10–4–710 did not

conform with Colorado Revised Statutes § 10–4–706(4)(a).  (Pl.'s Br. at 13.)  Plaintiff alleges

that Defendant "violated section 10–4–706(4)(a) by failing to provide a written explanation of

enhanced PIP coverages that were required to be offered prior to issuing the Austin Policy."  (*Id.*)

Defendant, on the other hand, contends that it is entitled to summary judgement because it offered

Plaintiff additional PIP benefits orally and in writing.  (Def.'s Br. at 13–22.)

Plaintiff admits that Dorothy Austin received and signed the PIP Form and the ACORD

Application form.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  In light of my explanation above,

the PIP Form sufficiently complied with section 10–4–710(2)(a), thereby offering Dorothy Austin

additional PIP benefits.  Thus, to the extent that section 10–4–710(2)(a) requires a written

explanation of additional PIP benefits, Defendant's PIP Form sufficiently complied.  Here, it is

irrelevant whether the statute mandates that the offer of additional PIP benefits be in writing,

because even assuming the statute mandates as such, Defendant complied.  Accordingly, Plaintiff

is not entitled to reformation based on this issue and in light of Plaintiff's admission, Defendant is

entitled to summary judgment.

### b.    *Plaintiff's Remaining Claims*

Plaintiff's second claim for relief is styled as "breach of contract — failure to pay PIP

benefits — willful and wanton failure to pay," and Plaintiff's third claim for relief is styled as

"violation of [Colorado Revised Statutes] § 10–4–706(4)(a)." (Compl. ¶¶ 49–57.)  Defendant is

entitled to summary judgment on each of these claims.  In the absence of a valid claim for

reformation, incorporating a higher level of benefits into Plaintiff's contract, Plaintiff does not

have a valid breach of contract claim.  Additionally, as described above in (*Analysis* § 2[a][2]),

*supra*, Plaintiff's third claim fails.  Even assuming that the statute imposed a requirement that the

offer be in writing, Plaintiff admits that Dorothy Austin received and signed the offer of additional

PIP benefits.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 3, 8; *deemed admitted at*

Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 3, 8.)  Accordingly, Defendant is

entitled to summary judgment on Plaintiff's claims.

### 3.    *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1. Defendant's motion for summary judgment (# 50) is GRANTED.

2. Plaintiff's motion for partial summary judgment (# 52) is DENIED.

3. The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff,

dismissing all claims with prejudice.  Defendant may have its costs by filing a bill of costs within

eleven days of the date of this order.

Dated this 7th day of July, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge